Our second case for the day is Howard Iten v. County of Los Angeles, case number 22-55480. Thank you, Your Honor, and may it please the Court. This is Katherine Veloie on behalf of Appellant Howard Iten. I'd like to reserve three minutes for rebuttal. A plaintiff does not have to risk liability to establish standing when challenging an unconstitutional action. Yet the county's moratorium in this case would have required Mr. Iten to do just that, forcing him to either risk possible incarceration or total inaction. Such a forced choice not only gives Mr. Iten standing to challenge the moratorium, but also results in an unconstitutional impairment of his contract. Your Honors, there are two main issues in this case. First, whether Mr. Iten has adequate standing to challenge the moratorium, and then second, on the merits, whether the county's moratorium violates the Contracts Clause. As to the first point, standing, Your Honors, which is what this case was dismissed on, it's clear that Mr. Iten has standing to challenge the moratorium. Under the county's moratorium, it states that a tenant shall not be evicted for nonpayment of rent as long as the tenant demonstrates an inability to pay rent and then provides notice every seven days, within seven days of the first of the month. However, there is an exception for extenuating circumstances, a term that was never defined by the county throughout the duration of the moratorium. So my understanding is this works a little bit different than the Washington moratorium that we were just talking about, in that in California, this is an affirmative defense for tenants, as opposed to just an outright bar on the landlord's side. So why didn't your client have to at least pursue an eviction? We'll get into the specifics, I assume, about whether all of the requirements that you've just outlined were met or not. Why didn't he have to at least try that? Your Honor, Mr. Iten did not pursue an eviction in state court because of the serious criminal and civil penalties that he faced if he went ahead and tried to do that in state court and ended up being wrong. So just play that out, though. So if he were to file an eviction action and the tenant were to show up and say, but I have this defense and lay out the argument, couldn't he at that point have looked at the seriousness or the validity of the tenant's arguments and made a judgment about whether to dismiss or not? I mean, do you have anything to show us that just by the fact of filing it all by itself, he was going to suffer significant consequences? Well, Your Honor, under the actual statement of the moratorium, it says that taking any action to terminate any tenancy, including service of any notice to quit or notice to bring any action to recover possession, can result in these types of different penalties that he could face, up to $5,000 per violation per day that the violation continues. And under County Code Section 2.68.320, he could be punished with up to six months in jail. And it's been made very clear by the federal court and by the Supreme Court, actually, in MedImmune, Inc. versus Gentech, Inc., that a plaintiff does not have to risk, where threatened action by a government is concerned. Courts do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat. So under what circumstances would he, if he brought the eviction action, I'm going to follow up on Judge Forrest's question. So if you brought the eviction action, at what point might he be liable? He could be liable at any point, Your Honor. It's up to the county to decide if they wanted to go ahead and bring suit against him for violating these. Now, the $5,000, as I understand it, is a civil remedy. So that goes to the tenant, is that right? That is correct, Your Honor. And at what point does the tenant have to assert the right to the civil remedy? Is it counterclaim? It couldn't be a counterclaim, Your Honor. It's an administrative, there's an administrative fine aspect, there's a civil liability aspect, and then there is also a criminal liability aspect. So he could face punishment under all three. Could your client have faced criminal penalties prior to bringing any formal court action? There are other listed potential, I think it goes through R actually, of the potential aspects that could violate the moratorium. Some of them include chilling conduct like preventing free speech for your tenants or anything like that. It's very long and listed out in section 9 and 10 of the actual moratorium. But as for bringing the action, it actually goes to subsection I, which is what I just read about the fact that if he was to bring an action, end up being wrong and have any type of untenable legal theory under which the court found it was untenable, he could be facing up to these fines, which the court has, again, said, is improper and should imbue him with standing, a minimum view of standing. The district court viewed the notice requirement here as pretty strict and binding on your client, which strikes me as sort of backwards to the way that we ordinarily would think of these kinds of things in a landlord-tenant relationship. And it surely seems to me that in an ordinary landlord-tenant relationship, if they're least required some kind of notice in writing, that the landlord could waive the notice, and the tenant might be able to say, you know, I gave him notice, and I caught him in the hall, told him what the circumstances were, and he said, sure, pay me the rent when you can. And that might be a defense to providing notice to the landlord under the contract. It certainly seems to me, then, that a landlord-tenant could agree to waive certain kinds of things. Why is the district court then enforcing them here? It's unknown, Your Honor. You know, if you actually go back and look at the original complaint that was filed, when we were dismissed the first time, the court said, go back, ask your tenant why he didn't actually talk about what is his excuse. We went back, asked the tenant about what his excuse was and whether or not he felt he had extenuating circumstance, and he basically raised genuine mistake of law. He said, I thought I only had to raise it once. I thought that was an extenuating circumstance, which under the time period in which the moratorium was changing, every single month being extended, new provisions were being added, provisions were being taken away, is entirely reasonable here. And if you actually look at California law, there is a reasonableness standard that goes into genuine mistake of law and makes that an exceptional circumstance that it would fall into here. Wouldn't that also immunize your client, though, from a criminal prosecution on the back end that you're complaining you're concerned about? I mean, if it's a mistake of law by the tenant, it's a possible mistake of law by the landlord, so how are they going to get prosecuted for something like that? Isn't that really illusory? There is no—he would not have actually been immunized, Your Honor, especially with the district court's opinion here because the district court's opinion is just that, an opinion to the state court. The state can decide to prosecute him however they would like to. So perhaps immunize is a bad term, but you're concerned, your client's got a concern, I didn't want to take any action because I could have been sued or I could have been prosecuted. There's no barrier to him simply asking the tenant, tell me what your exigent circumstance is, right? That doesn't constitute harassment under the statute. It could have constituted harassment. Even Mr. Iton went back and went ahead and asked his tenant about that. That's a defined term under the statute. I don't see how asking for information qualifies as harassment. Well, the term untenable, Your Honor, was never defined by the county in this case, just as with extenuating circumstances, and the county had many opportunities to go ahead and define it. It isn't until the appellee brief that was submitted before you all that they now are saying, well, hospitalization and giving examples. It has never been a defined term. They've had many opportunities to submit a clarifying amendment to try and say what they actually meant by all of this. Your client did that once the first complaint was dismissed, so apparently he wasn't concerned about that because he had judicial sanction to go back and do that at that point or what? Well, he was concerned, Your Honor, but in order to continue with the case, he went ahead and asked his tenant about that, and once he got the answer about genuine mistake of law as an extenuating circumstance, we've re-raised that in our first amended complaint. And we believe that it is an extenuating circumstance because, again, if you look at California law, we can point to cases like State Farm Fire and Casualty Co., Community Youth Athletic Center, and even Solval v. Superior Court, all of which say that there is relief from mistake, inavertance, surprise, or neglect, and that those all have to be read very broadly to effectuate the law's purpose. And the law's purpose here was to protect tenants. It was not to protect landlords. It was to keep tenants in their homes and in their businesses and to prevent the spread of COVID-19, and that's very clear if you read the face of the actual moratorium that was passed. And that not only bolsters the common-sense argument that the moratorium was enacted to protect tenants, but also that there were no penalties on a tenant that guessed wrong here. It was only penalties on a landlord who guessed wrong. And, Your Honor, it is consistent with the district court's later conclusion in a separate case, another Los Angeles apartment case, where the district court found that the very same provisions were vague. They were void for vagueness because how would a tenant ever know, how would a landlord ever know, and how would a tenant know when they were supposed to assert the affirmative defense in these cases? So I guess I'm struggling with that a little bit because, I mean, I get, I understand the argument about the tenant made a mistake of law in terms of what notice was required, but the fact is that the statute says you've got to give notice within seven days of rent being due. That's on a rolling basis. So why, and the landlord is going to read the statute. The landlord has the opportunity to have its own counsel and make its own conclusion about the law. The ordinance says what it says. I just, I'm struggling with why is it that the tenant's confusion, to the extent that that's what the explanation is, governs whether your client has standing or not and whether, why your client didn't have to make its own judgment about what the law is and not just react to what the tenant was doing. Because, Your Honor, even if Mr. Iton went ahead and made his own judgment, if he turned out to, again, be wrong, he faced serious penalties, which. . . Is it wrong or untenable? It is untenable. That is the language. . . Difference. But it's not defined, Your Honor. And, again, an undefined term can be read very broadly in this sense. There are a lot of undefined terms in the law. Reasonableness, I mean, you can go down the list. There are a lot of undefined terms in the law. But the county, as the author of the moratorium, is the only one in the position to know what they really mean. The county is the author of the moratorium. They're the ones who know what it means. And they're trying to essentially have their metaphorical cake and eat it too because they're trying to keep it as vague as possible to allow as many tenants to be included by the moratorium but then also shut the door immediately to say that landlords like Mr. Eiten, who are trying to take the conservative approach here and not risk liability, should have actually brought a suit much earlier on the back end. And I want to point out, Your Honors, that the county's litigation conduct throughout this case supports our view of this. The county declined to reassert standing in its motion to dismiss. It wasn't until the hearing before the district court, when the district court sua sponte, re-raised standing, that the county said, oh, yeah, we didn't mean we weren't waiving that. We just didn't want to bring it up because, you know, it wasn't raised in the complaint. Well, waived or not, that's a jurisdictional issue that we've got to look at in any event, right? And so what you're bumping up against is a very established principle that we're not going to get involved in somebody who just wants an advisory opinion about what the law is or isn't requiring. If you're not subject to regulation, you don't get the court's involvement. Absolutely, Your Honor, you are correct. It's a jurisdictional issue. It can be raised at any time. But we not only sought or not only seeking declaratory relief here, we are also seeking damages in the form of nominal damages. And this case continues because there are aspects of the moratorium here that are still ongoing. The tenants, I'm sorry, the landlord's right, Mr. Iton's right to recover late fees and interest are extinguished entirely. That has continued in perpetuity. He will never be able to recover that. And we sought nominal and actual damages. And I see that my time has run. I'd like to save my remaining time for rebuttal, Your Honors. Thank you. May it please the Court. Edward Elzanders on behalf of the County of Los Angeles. Your Honors, I know that the Ninth Circuit had deemed the Jevons case in this case as related. And that's why these cases are before you. But this case is a very different procedural posture. And I think it's a much simpler case in terms of affirmance. And that's true for two reasons. You've just extensively discussed the first reason, which is the standing reason. The second reason is the fact that this is a rather unique situation where the contract, that is the basis for the contract clause argument, was entered into five months into the pandemic at a time there were all sorts of regulations floating around. And we're not aware of any case that's ever allowed a contract clause argument in this context. So going back to the first issue, which is the standing issue. So to back up just a little bit, if we conclude that we don't have standing, we can't get to the merits, right? There's no need to get to the merits. That's not no need. We can't do it. We don't have the power to. Isn't that fair? Yes. We raise it as an alternative basis to affirm. But the district court didn't reach that question. Correct. It's an alternative basis to affirm. But, again, I'm just pointing out that this is a very unique case. Standing would actually dismiss the case rather than affirm a judgment. Yes. Yeah. So going back to the first issue, the standing issue, the one that the district court did rely on, this is a unique situation where the plaintiff has admitted in their complaint that timely monthly notice is generally required, and this is in paragraph 30, and the tenant has not provided timely monthly notice. How does that relate to standing? Does this moratorium not apply to Mr. Eiten? Mr. Eiten cannot claim reliance on this. No. Let's start with the answer to my question. Does the county intend that this moratorium apply to Mr. Eiten? Yes. Does it apply to Mr. Eiten? Did Mr. Eiten think that it applied to him? Yes. Okay. And he's now claiming under the contracts clause that you have altered the terms of his contract with his tenant. But he has to be able to show that he's been injured. But he's got to — but he has — first of all, but he claims that you have altered the terms of his relationship, which is exactly what you intended to do, right? Yes. Okay. Then how can he possibly not have standing to challenge the constitutionality of the act that's being applied to him? The district court dismissed this for failure to exhaust his remedies. Exhaustion of remedies is not a standing question. That goes to the merits. The district court has applied the ordinance to him and told him he doesn't have standing to challenge the very ordinance that's being applied to him. Your Honor, the district court did not dismiss on grounds of exhaustion of remedies. But that's what this is. This is really an exhaustion problem. It's not really a standing problem. Well, if you are seeking damages, you have to be able to show injury in fact. That may — of course, you may have to show some injury. But all he's got to do is allege that you have altered the terms of the contract. That's what the Contracts Clause is about, is altering the terms, retroactively altering the terms of a contract. He has argued that you have done that, that he has been damaged in some way. He has asked for nominal damages here. And that gives him standing to challenge the constitutionality of the act. I don't understand the standing argument here at all. Well, again, if you want to call it exhaustion of remedies or a different argument, it comes down to the notion that in order to be able to seek relief — Exhaustion of remedies. But the difference between an exhaustion of remedies argument is that a standing argument is a 12b-1 and an exhaustion of remedies argument is a 12b-6. And this was dismissed as a 12b-1. And I have to be very frank with you. I don't understand what the district court did at all. Well, what the district court was getting to, it was the notion that you need to be able to show that you could rely on this ordinance, on this resolution, to be able to claim injury, to be able to pursue damages. And what the court was saying is that you haven't pled that the tenant — You haven't pled compliance with the ordinance that's being applied to you. How can you not have standing to challenge the constitutionality of something that's being applied to you? But again, I mean, maybe we're quibbling over whether it's standing or something else, but it comes down to — Well, it makes a huge difference, counsel, because the way that I perceive of the exhaustion requirement is it might be perceived as an exhaustion of remedies argument. An exhaustion of remedies argument is an argument on the merits. That's a 12b-6. That's not a standing argument. You can say he can't collect damages because he didn't comply with all the steps of the ordinance. But his argument is the ordinance is unconstitutional. He surely has standing to challenge the ordinance. You've altered — you have altered — you told us that you deliberately applied this to him, that you believed it applied to him, that he believed it applied to him, and it has altered the relationship of his contract with his client. And now he wants to challenge that under the Contracts Clause. But yet he cannot rely on the resolution as applying to him, as impairing his rights because — Because he hasn't followed all of the steps provided by the resolution. But again — But that concedes, then, that the ordinance, that the moratorium applies to him. If it applies to him, then he surely has standing to challenge it. But you still come down to the fact that this Court has the ability to affirm for any reason. And what the Court is saying — Okay. If you want to move to the merits, that's fine. I just want to make sure you keep your lines straight, that you're abandoning the standing argument. I'm not abandoning the standing argument. It sounds like this Court disagrees. I'm not persuaded in the least by the standing argument. That's why I'm trying to move on, because it sounds like I'm not going to be able to change your mind. Because what the Court was ultimately saying is the plaintiff does not have the ability to bring this claim. Because he's pled, essentially, that the tenant did not provide timely notice. And so the only way around that is extenuating circumstances. Well, let me go back to the question that I asked the opposing counsel. And that is, in an ordinary landlord-tenant relationship, there are various notices that need to be provided by one side or the other. I'm going to end the lease at the end of the time. I need to extend and go to a month-to-month. Notices have to go back and forth both ways. And surely the need for a written notice under such terms of a lease can be waived by one side or another. Am I right on that? Yes. Just as ordinary landlord-tenant. Can this notice be waived? No. Well, can this notice be waived? I think you probably could argue that that would be an extenuating circumstance. No. But Mr. Eiten has one property. It's a property he used to operate as a garage. His current client or tenant is operating it as a garage. If he's over and walks the property, he can see that nobody's coming in during the middle of a pandemic to have their cars repaired. And the tenant says, I'm in a bad way. And he says, boy, I can see that. He says, I don't think I'm going to be able to make rent this month. And the landlord says, gee, okay, well, let's talk about this. The county gets to come in and say, the tenant failed to provide you with written notice, landlord, so you can't challenge this law? That is not this case. It is not what is pled. I mean, there's no allegation that there was some sort of meeting of the mind, so they sat down and talked. I mean, in fact, what happened is after you have the first dismissal by the court, they go back to the tenant and say, okay, give us an extenuating circumstance. And the tenant comes up with this notion of I didn't understand that I had to give notice every month. There's no discussion of we had a deal and there was some sort of waiver. It comes down to the fact that there is no extenuating circumstance here. But the tenant calls the landlord and says, you know, Bob, you've been by the shop. You know what's going on. I'm in a bad way. I'm not going to be able to do this. I understand I've got some protection under moratorium whose terms I don't understand because I'm not a lawyer, and it's very long and complicated, but in talking with friends, I think I've got some kind of relief here. And the landlord says, well, we'll have to see about that, but you've at least told me, I appreciate you telling me that you're not going to be able to do this. I'll have to go and talk to my legal counsel and see if we can figure this out. And now the county gets to come and say you can't bring a challenge to the moratorium because you didn't get formal notice? You're talking about a hypothetical that didn't happen. These facts, these facts, I mean, if that were the situation, you would expect that to be pled in this complaint. You would expect a request for amendment to plead these types of facts. That's not what we have here. You haven't created a cause of action here. This is not like the Federal Tort Claims Act where you have to exhaust your remedies by going to the agency that damaged you before you can come into federal court. There's no cause of action that's created here by your moratorium. So you're trying to enforce a notice requirement on a cause of action that arises under the Constitution. That is, the landlord has come in and said, you have altered my relationship that I entered into with this guy under California law prior to the pandemic. You are interfering with my relationship. That's a violation of the Contracts Clause. Now we get to argue about substantiality and reasonableness, but you've altered my relationship. I'm not sure how the county gets to come in and make up an exhaustion requirement before you can bring that cause of action. As part of altering the relationship, you have a provision that says, and it's there, as they admit in the reply, it's there to protect the landlords. You have a provision that says the tenant has to apply, has to comply with these rules, has to give notice, and has to essentially provide extenuating circumstances if it doesn't provide that notice. And as a matter of law here, the only thing that's pled would not suffice as extenuating circumstances. So you ultimately have no claim. And that's the problem. And this Court talked about the harassment issue. Again, this is an affirmative defense. There is no bar on unlawful detainers. And the statute specifically says that if the landlord has no reasonable cause to believe, so it has to be unreasonable. And obviously in a situation where you don't believe there's a valid reason for the failure to give notice, that they're not complying with this, that they can't timely give notice. And I will add that the Lawndale ordinance that applied at this point required written documentation, and they never complied with that either. So if Mr. Eiten had filed an eviction notice here, do you know how the California courts would have treated the request for an eviction notice if there wasn't a written notice from the tenant? You're saying no written notice at all? No written notice. The landlord has had a conversation about the difficult situation. And it's sort of obvious to everybody, right? We're not stupid people. We know what's going on in the middle of this pandemic. It's just obvious to us, right? Well, the county, I guess the reason why I'm confused is the county resolution does not require written notice. But you would go in and you'd say, we've got no notice and inability to comply. We have a lease essentially that is now over. They chose to renew it. If the other side raises it as an affirmative defense, gee, I couldn't pay, well, then they're going to have a problem because they never complied with the notice requirement. And so this would have gotten litigated in that fashion. And even if they lost, they're not liable for harassment. Do you think that the courts would have issued an eviction notice on behalf of the tenant? No. Yes. I think if he had gone into the court in this context, particularly when his lease was up, a five-year lease that he says he wanted to get out of anyway, he has a tenant who never complied with the Lawndale ordinance, is a tenant that never complied with the county resolution, I think that a court would have said either, you know, they're out right now or at least, I mean, if they temporarily said you had to hold off, but it would have gotten litigated. There's some pretty big sticks here if he guesses wrong. That's only if a court finds that the landlord's conduct is reasonable. And I think the fact that we're in here talking about extenuating circumstances and the legitimate situation shows that this would have been considered reasonable. I don't know how you can look at this reading, you know, construction of this language and say, well, gee, there's not a legitimate dispute if, you know, or as a matter of law, it has to be construed the way that the county construes it. I mean, at a minimum, it's a reasonable debate. And we don't even think it's reasonable because as a matter of law, there was no compliance. And I see I only have a minute and 14 seconds left, so I'd like to switch to the other issue because I do think it's important. I mean, if you're looking at this and saying I don't agree with your understanding, you still have a contracts clause argument in a situation where this contract was entered into five months into the pandemic. And the first prong of the contracts clause test, which is the one where most courts struggle with, is that you have to have a substantial impairment, which means a substantial interference with the reasonable expectations of the party. And the courts have always looked at foreseeability. And the debate, like in Jevons and the other cases, is always over. Could you have seen the pandemic coming? Your argument, then, is at the time that they enter into the five-year renewal, the landlord already knows of the moratorium. And so he enters this new lease subject to the moratorium. It's not just this moratorium. It's the he already knows that Lawndale has an ordinance. He already knows that the state at the time had a three-month hold on unlawful detainers. He knows that the county has the resolution, which they then make the baseline as of September 1. He absolutely knows that these types of regulations are out there. My understanding from the timeline is that he entered into that second five-year lease before the Lawndale regulation went into effect. So at the time that he entered, at the time of the first five-year lease term, and then when he entered the second one, there wasn't a moratorium that applied to him. It was after that. No, I don't think that's – if I understood what you're saying about the Lawndale ordinance. Let me back up. Here's the timeline. In March of 2020, you have the county board chair saying, we're going to pass this resolution, applies to unincorporated areas. But that didn't happen until September. Excuse me? That happened in September, right? No, that was March 2020. You have the initial resolution by the board, does not apply to unincorporated areas. It does not apply to Lawndale. At that point, it does not apply. April 2020, you now have the board extending it to incorporated areas. It's the entire county. Now, at that point, you have confusion for a couple months because you have some cities like Lawndale that have their own ordinances. And what happens on September 1, 2020, which was the date that this second contract takes effect, is the county makes its ordinance or its resolution the baseline and essentially says that if you have ordinances like the Lawndale ordinance that are more restrictive on tenants, well, then you comply with the county resolution. So that's the way the timeline worked. It wasn't that the resolution never applied to incorporated entities. It's the fact that at the time this was negotiated and entered into and became effective on September 1, you had the county resolution applying. You had the Lawndale ordinance applying. They knew that the county was debating on extending the resolution and making it the baseline for the entire county. All of this was known. And we're not aware of any case in the history of any of these COVID-19 discussions or analysis where courts have said you could have a contracts clause violation at a time when you're absolutely inside the pandemic, you know about the issues. And the only case we found that comes close, and it's a situation where they didn't actually have to deal with an existing contract because it was an advocacy group seeking a preliminary injunction, is the Southern California Rental Housing Association case, which we cite in our briefs. And the court says the regulations that halted evictions, which were passed during the early days of the pandemic, could not have been predicted by landlords. That's what you typically see in the Jevons case, all these other cases that are out there. Counsel, you're over time. If you can wrap up unless there are further questions. Okay, I will wrap it up right now. The court then says, however, the ordinance at issue followed the issuance of many similar regulations. They don't have to be the exact same one, but it's similar, as such it was foreseeable. And that's the context you have here where you're five months into the pandemic and absolutely these types of regulations were foreseeable because they were being passed all over the place. It may be the basis for some other claim. It's not a contracts clause claim. Any further questions? Thank you, Your Honor. Any questions? Thank you. Thank you. Thank you, Your Honor. Just briefly. First, I'd like to touch on opposing counsel's statement about the prior statements of COVID-19. There were two statements made by the tenant in April of 2020 and then October of 2020, where the tenant said that times were tough, he wasn't going to be able to pay. The natural inclination of that obviously is COVID-19 is preventing me from being able to pay. It's not like there was no meeting of the minds at all here. And then as to the signing of the new lease, which was just discussed very deeply, the signing of the new lease is irrelevant because the county alone is the but-for cause of Mr. Iton's injury. He entered into a new lease with his tenant, but the but-for cause extends beyond the original lease. All right. But I do want to make clear. So the new lease goes into effect, is it October 1st? That's correct, Your Honor. Okay. And that is also the date that the county ordinance extends and becomes the baseline. Is that correct? I believe it's effective that date. I have a timeline here. I believe it is September 1st, Your Honor. Oh, September 1st? I believe so. So the new lease then is signed knowing that the moratorium is in place. September 1st is when it is all done. Oh, I'm sorry. It's all September 1st, not October 1st. Yes, Your Honor. Okay. So if both of them become effective on the same day, do we have to get down to what time they become effective? Because otherwise this is the background framework for all leases signed in L.A. County. If you've renewed the lease then, then you're subject to that law, and there's no interference with the contracts clause. You may have something for prior to September 1, but not for September 1. Now you know exactly what the law is going to be. Well, Your Honor, two points to that. First, there really were no other options for Mr. Eitan at this time. He's painted into a corner. But no options is not a problem of the contracts clause. Well, when you have a judicial counsel moratorium already in place saying that you can't evict your tenant regardless, you either have a piece of paper. Again, prior to September 1 may be a contracts clause problem. But post-September 1, when you enter into a renewed lease, knowing what the framework of the lease is, then you don't have a contracts clause argument. Well, to my second point, Your Honor, I'd point out that the contract or that the moratorium at this time was still changing. Even on September 1, after September 1, additional provisions were being added, changing the moratorium all the time. How does that help you? Well, it helps because pointing out that the moratorium is constantly changing makes it clear that there was no foreseeability here for Mr. Eitan to know what he's – Or, I mean, to flip that another way, it also makes clear that there's no certainty in any sort of contract in this field, and yet you're voluntarily stepping into this field and entering into a new contract. Why would you do that if you're concerned about those things? Well, he's been a landlord for many years at this point. I mean, there's uncertainty in everything. But I think many courts have made clear that COVID-19 was obviously an unforeseeable event for landlords of all types, especially in the commercial context. The problem for you is that your client renewed the lease in the middle of this morass, knowing that things are changing constantly, that the rules are pretty ominous, and yet you want to say that – sort of honor the pristineness of my contract. How does that even work in this context? Well, Your Honor, again, I'd point out the fact that even through the changing mire of all of this, his only other option was to renew the contract. And the terms are substantially the same as the original lease. What do you mean his only option was to renew the contract? Because whether he has a piece of paper or not, he still could not get his tenant out. Okay, that might make sense if he was to redo for, you know, on a 30-day rolling basis or one year, but he signed a five-year contract. But that is standard for his practice. I mean, it was a five-year lease originally anyway, and I believe that's standard in most commercial leases. It's not year-to-year. That's not to say he couldn't have changed that term. There's nothing that says he had to enter into a five-year contract. He chose to do that. He did choose to do that, Your Honor. But the only term that substantially changed is the fact that he put his tenant actually on a payment plan to pay the back rent that had already been owed to him on the first contract. So at a minimum, Your Honor, as Judge Bybee just pointed out, there is a contracts clause claim for the first lease before it was signed, and that is adequately pled. And Mr. Wrighton should be able to go back, because he has standing, to actually litigate these additional contracts clause claims, and that's what we would ask this court to do. We would ask this court to reverse and remand back to the district court for additional merits-based decision-making. Any further questions? Thank you, Counsel. Thank you, Your Honors. Thank you for the helpful arguments in this case. The matter of Iton v. County of Los Angeles is submitted.
judges: BYBEE, FORREST, Gordon